**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **GUILLERMO PEREZ,** § <br> **#49181-177,** § <br>     **MOVANT,** § <br> § <br> v. § <br> § <br> § <br> **UNITED STATES OF AMERICA,** § <br>     **RESPONDENT.** § | **CIVIL CASE NO. 3:17-CV-1344-M-BK** <br> (CRIMINAL CASE NO. 3:15-CR-55-M-1) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the United States Magistrate Judge for case management. As detailed here, the Section 2255 motion should be **DENIED.**

**I.   BACKGROUND**

In 2015, Movant Guillermo Perez pled guilty, pursuant to a plea agreement under FED. R. CRIM. P. 11(c)(1)(C), to two counts of assault on a federal officer and was sentenced to 240 months' imprisonment—a consecutive 120-month term on each count. Crim. Doc. 53. His direct appeal was dismissed as frivolous. *United States v. Perez*, 687 F. App'x 384 (5th Cir. 2017). Perez subsequently filed this *pro se* Section 2255 action, alleging ineffective assistance of counsel. Doc. 1. The Government filed a response in opposition. Doc. 7. Perez did not file a reply.

Upon review, Perez has failed to show that counsel was constitutionally ineffective. Thus, his Section 2255 motion fails on the merits.

II.   ANALYSIS

To establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id*. at 697.

To prove deficient performance under *Strickland*, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The movant bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Perez alleges that counsel rendered ineffective assistance by advising him to (1) sign a false factual resume and (2) accept the Rule 11(c)(1)(C) agreement for a 20-year sentence. Doc. 1 at 6. In essence, Perez's argument is that there was an insufficient factual basis for his guilty plea to the offense of assault on a federal officer. *Id.* He maintains that he did not knowingly and intentionally use a firearm, did not realize that the individuals were federal agents, and did not hear the loudspeaker announcing that federal agents were present. *Id.* Perez also surmises that "there was no benefit to the plea bargain" because he faced only a guideline imprisonment

range of 51-63 months.  Doc. 1 at 6-7.  He thus claims that he "was prejudiced by Counsel's erroneous advise [sic] because he is serving . . . 15 more years in federal prison."  *Id.*

Perez's assertions are wholly unsupported and are belied by the record, including his previous sworn testimony.  Perez affirmed under oath at rearraignment that he understood the essential elements of the offenses to which he was pleading guilty and admitted that he committed each.  Crim. Doc. 99 at 12-13.  He also confirmed that he had reviewed the factual resume in detail with counsel before signing it, that the stipulated facts contained therein were true, and that he understood them.  Crim. Doc. 99 at 21.  He stipulated:

> [O]n February 3, 2015, a Federal Grand Jury returned an under-seal indictment against several individuals, including Jose Maya involving drug-trafficking.  Arrest warrants were issued for the arrests of these defendants, including Maya. Guillermo Perez was not a defendant at that time.
>
> As observed by agents, Maya had been residing at 3405 Brook Lane, Grand Prairie, Texas.  Perez was also residing at this location and had been assisting Maya with May's drug-trafficking operations.
>
> On the morning of February 10, 2015, at approximately 6:00 a.m., agents sought to arrest Maya at 3405 Brook Lane.
>
> The law enforcement personnel who were executing the arrest warrant for Jose Maya at 3405 Brook Lane, Grand Prairie, Texas, were dressed in distinct clothing identifying themselves as FBI Agents.  Prior to entry into 3405 Brook Lane, the emergency lights of FBI vehicles and marked Grand Prairie Police Department vehicles were activated, making it clear that they were law enforcement. In addition, an announcement over a loud speaker identifying the presence and intent of law enforcement was utilized. This announcement was heard by Perez.
>
> Following the announcement and the lights of the vehicles having been activated, law enforcement, led by Special Agents Ray Harrison and Mario Verna of the FBI SWAT team began to make entry into the residence.  At this time, Perez located an AK-47 and fired two shots towards the front door where law enforcement was making entry into the residence.  These shots did not make contact with the agents but were aimed at them and Perez's intent was to assault these law enforcement agents with these bullets.  Perez knew that the individuals making entry into the house were law enforcement officers.
>
> In addition, Perez had engaged in drug-trafficking activities with Maya and was in

>possession of methamphetamine and heroin at the time of his arrest.  Perez was also in possession of a firearm in furtherance of his drug trafficking activities.

Crim. Doc. 20 at 2-3.

Perez's stipulations of fact support his guilty pleas and wholly contradict his claims. Moreover, he offers no reliable evidence to rebut the record or the Court's findings that his plea was supported by an adequate factual basis.  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) (noting movant must produce "independent indicia of the likely merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations).   It is also notable that Perez had ample time—more than four months between his guilty plea and sentencing hearing—to contest his guilty plea and the factual resume, but he did not do so.  Instead, at sentencing, he expressed remorse and apologized for his conduct.  Crim. Doc. 100 at 5-6.

Furthermore, contrary to his assertions, Perez benefitted from the Rule 11(c)(1)(C) agreement.  While the 20-year sentence imposed was a significant upward departure from the guideline range of 51 to 63 months for the two counts to which he pleaded guilty, Perez considerably limited his overall sentencing exposure as the remaining counts were dismissed. Crim. Doc. 100 at 3 (Sentencing Tr.); Crim. Doc. 42-1 at 13, PSR ¶¶ 82, 84-85.  Indeed, if Perez had proceeded to trial and been convicted on all six counts, he would have faced an aggregate prison term of 45 years to life.  Crim. Doc. 42-1 at 13, PSR ¶ 85.

On this record, Perez has failed to demonstrate deficient performance by counsel.  That notwithstanding, Petitioner also has wholly failed to demonstrate prejudice – namely that he would not have pleaded guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 52, 59.

In light of his solemn assurances at rearraignment and the significant benefit he received from the Plea Agreement, Perez's belated and unsupported assertions here, with nothing more, fall woefully short of satisfying his burden.

### III. CONCLUSION

For the foregoing reasons, the motion to vacate sentence under 28 U.S.C. § 2255 should be **DENIED** and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED**.

March 15, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).